UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

KENYA BROWN,
    *Plaintiff*,

v.

SCOTT SEMPLE, *et al.*,
    *Defendants*.

No. 3:18-cv-01239 (JAM)

**INITIAL REVIEW ORDER PURSUANT TO 28 U.S.C. § 1915A**

Plaintiff Kenya Brown is a prisoner in the custody of the Connecticut Department of Correction ("DOC") at Cheshire Correctional Institution. He has filed a complaint *pro se* and *in forma pauperis* under 42 U.S.C. § 1983 against Commissioner Scott Semple and Director of Security Antonio Santiago arising from DOC's rejection of Brown's request for a Wicca bible. For the following reasons, I will dismiss Brown's complaint in part, but will allow Brown's First Amendment Free Exercise claim for injunctive relief to proceed against Semple and Santiago at this time.

### BACKGROUND

The following facts are alleged in the complaint and are accepted as true only for purposes of this initial ruling. On April 19, 2018, Brown received a "Publication Rejection Notice" for a "bible" that was received at Cheshire Correctional Institution. *Id.* at 3 (¶¶ 1-2). The "bible" was a book entitled *Witches' Craft: A Multidenominational Wicca Bible* by Bruce Wilborn. *Id.* at 3 (¶ 2), 8, 12. According to the rejection notice, the book was rejected because it was "written in code" and therefore "jeopardizes a legitimate penological interest." *Id.* at 3 (¶ 4), 8. Brown grieved the denial of the book, arguing that Wicca is an established religion, which is

protected under the First Amendment, and that the "entire book" is not "written in code," as the rejection notice states. *Id.* at 3 (¶¶ 6-7), 10.

On May 11, 2018, he received a written letter response from Director Santiago upholding the rejection of the book. *Id.* at 3 (¶ 8), 12. Santiago explained that DOC's Media Review Board had previously rejected the book in July 2014 because it was written in code. *Id.* at 12. Santiago noted that one chapter of the book entitled, "Runes, Symbols, and Rituals," contains "six different Rune Alphabets and their translations," and he explained that such codes and symbols could easily be used by inmates to circumvent security. *Ibid.* Santiago quoted one passage of the book in which "the author writes, 'During early times, it was commonplace for witches to use secret magickal alphabets to write down prayers, invocation [sic], and other religious beliefs, thereby ensuring privacy from nonwitches.'" *Ibid.*

According to Santiago, "[t]his type of information presents a security concern in any correction setting and therefore this publication will continue to be rejected." *Ibid.* Santiago suggested that "[if] you wish to pursue the study of Wicca, the following publications have been approved by the Media Review Board: 'Wicca, A Guide for the Solitary Practitioner' by Cunningham, and 'Complete Idiot's Guide to Wicca and Witchcraft,' by Zimmerman." *Ibid.*

Brown disagrees with Santiago's decision, arguing that "there is no penological reason for not allowing the bible into a correctional facility other than inadequate religious equality, religious discrimination and [denial of] equal protection." *Id.* at 3 (¶ 10). He contends that Santiago's authority to reject the book stems from "unconstitutional customs and practices" established by Commissioner Semple. *Id.* at 4 (¶ 15). He sues Semple in his official capacity only

2

and Santiago in his individual capacity only, and he alleges two counts for violation of the First Amendment. *Id.* at 5.

## DISCUSSION

Pursuant to 28 U.S.C. § 1915A, the Court must review a prisoner's civil complaint against a governmental entity or governmental actors and "identify cognizable claims or dismiss the complaint, or any portion of the complaint, if the complaint—(1) is frivolous, malicious, or fails to state a claim upon which relief may be granted; or (2) seeks monetary relief from a defendant who is immune from such relief." If the prisoner is proceeding *pro se*, the allegations of the complaint must be read liberally to raise the strongest arguments that they suggest. *See Tracy v. Freshwater*, 623 F.3d 90, 101–02 (2d Cir. 2010).

In recent years, the Supreme Court has set forth a threshold "plausibility" pleading standard for courts to evaluate the adequacy of allegations in federal court complaints. A complaint must allege enough facts—as distinct from legal conclusions—that give rise to plausible grounds for relief. *See, e.g.*, *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). Notwithstanding the rule of liberal interpretation of a *pro se* complaint, a *pro se* complaint may not survive dismissal if its factual allegations do not meet the basic plausibility standard. *See, e.g.*, *Fowlkes v. Ironworkers Local 40*, 790 F.3d 378, 387 (2d Cir. 2015).

Plaintiff contends that defendants violated his First Amendment freedom of religion because the rejection of *Witches' Craft* interfered with his "choice to worship in the arts of Wicca." Doc. #1 at 5 (¶ 2). He also argues that, by rejecting the book, defendants "dictat[ed] to [him] which religion he has to worship," which constitutes discrimination. *Id.* (¶ 3). I construe

3

these arguments as attempts to state claims under the First Amendment's Free Exercise and Establishment Clauses. To the extent he claims defendants discriminated against him on the basis of his Wiccan faith, I will construe Brown's complaint as attempting to claim a violation of the Fourteenth Amendment's Equal Protection Clause. I conclude that while Brown's Free Exercise claim may proceed, he has not alleged enough facts to state a plausible claim for relief under either the Establishment Clause or the Equal Protection Clause.

### *Sovereign Immunity*

Brown has sued Semple in his official capacity only. Doc. #1 at 1. Because Semple is an employee of the State of Connecticut, to the extent Brown has sued him for money damages, his claim is plainly barred by the Eleventh Amendment. *See, e.g.*, *Kentucky v. Graham*, 473 U.S. 159, 169 (1985). As such, I will dismiss any claim against Semple for damages, although Brown may maintain his suit against Semple for injunctive relief to the extent he validly alleges an ongoing constitutional violation. *See Va. Office for Prot. & Advocacy v. Stewart*, 563 U.S. 247, 254–55 (2011) (citing *Ex parte Young*, 209 U.S. 123 (1908)).

### *Supervisory Liability*

Brown's complaint does not allege that Santiago denied him the Wicca bible in the first instance, but rather that Santiago only did so when he rejected a grievance that Brown filed after the first denial. The Second Circuit has suggested that it is "questionable whether an adjudicator's rejection of an administrative grievance would make him liable for the conduct complained of." *McKenna v. Wright*, 386 F.3d 432, 437 (2d Cir. 2004).[1]

---

[1] In *Colon v. Coughlin*, 58 F.3d 865, 873 (2d Cir. 1995), the Second Circuit listed five ways in which a supervisory defendant may be deemed personally involved in a constitutional violation to, including, among others, if "the defendant, after being informed of the violation through a report or appeal, failed to remedy the wrong," or if "the defendant exhibited deliberate indifference to the rights of inmates by failing to act on information indicating that

District courts in this Circuit are split on whether an official's review and denial of a grievance constitutes personal involvement in an underlying unconstitutional act. *See Young v. Choinski*, 15 F. Supp. 3d 172, 191 (D. Conn. 2014) (collecting cases). In general, courts have held that a defendant is not personally involved when a plaintiff alleges only that the defendant denied a grievance. *Ibid.* On the other hand, if a prison official receives a grievance for an ongoing violation that the official can remedy, the official personally reviews the grievance, and then responds to the grievance, the official may have been sufficiently personally involved to be individually liable for the alleged constitutional violation. *Id.* at 191–92; *see also Ackridge v. Aramark Corr. Food Servs.*, 2018 WL 1626175, at *16 (S.D.N.Y. 2018).

The deprivation of Brown's Wicca bible was an ongoing alleged violation that Santiago could presumably remedy, because Santiago appears to have reviewed the grievance (and once again, the book), and Santiago provided a reasoned response. Nonetheless, because at best the law is not clearly established that a supervisory official violates the Constitution by erroneously denying a grievance appeal, I must conclude that Santiago is entitled to qualified immunity as to Brown's claim for money damages. *See Poe v. Leonard*, 282 F.3d 123, 134 (2d Cir. 2002) (qualified immunity requires showing that official violated clearly established law and noting that, in the supervisory liability context, a court's focus must be on whether the law was clearly established both as to the underlying constitutional violation as well as supervisory liability doctrine by which the supervisor would be held liable); *Allah v. Semple*, 2018 WL 3733970, at

---

unconstitutional acts were occurring." *Id.* at 873. The *Colon* decision, however, pre-dates the above-quoted statement from the Second Circuit's *McKenna* decision in 2004, which states that it is "questionable whether an adjudicator's rejection of an administrative grievance would make him liable for the conduct complained of." 386 F.3d at 437. More recently still, the Second Circuit has expressly reserved deciding whether the above-quoted aspects of *Colon* are still good law in light of the Supreme Court's intervening decision in *Iqbal*, which "may have heightened the requirements for showing a supervisor's personal involvement with respect to certain constitutional violations." *Grullon v. City of New Haven*, 720 F.3d 133, 139 (2d Cir. 2013).

*7 (D. Conn. 2018). On the other hand, I will allow Brown's claim to proceed against Santiago as to his claim for injunctive relief. *See Huminski v. Corsones*, 396 F.3d 53, 70 (2d Cir. 2005); *Adler v. Pataki*, 185 F.3d 35, 47–48 (2d Cir. 1999).

### *Free Exercise of Religion*

The First Amendment's Free Exercise Clause protects a prisoner's sincerely held religious belief. *See Ford v. McGinnis*, 352 F.3d 582, 588 (2d Cir. 2003) (Sotomayor, J.). Traditionally, the Second Circuit has required that to succeed on a Free Exercise claim, a prisoner must first show that the disputed conduct substantially burdens his sincerely held religious beliefs, at which point the defendant must proffer a reasonable relationship to a legitimate penological interest to justify the restriction, and the prisoner must then show that the defendant's concern is irrational. *See Salahuddin v. Goord*, 467 F.3d 263, 274–75 (2d Cir. 2006).

The Court must "resist the dangerous temptation to try to judge the significance of particular devotional obligations to an observant practitioner of faith." *McEachin v. McGuinnis*, 357 F.3d 197, 201 (2d Cir. 2004). Instead, the Court must ask whether the state has put "substantial pressure on an adherent to modify his behavior and violate his beliefs." *Id.* at 202 n.4. In light of the Supreme Court's decision in *Employment Division v. Smith*, 494 U.S. 872 (1990), the Second Circuit has more recently suggested that there may be reason to question whether the "substantial burden" element of this test remains viable. *See Holland v. Goord*, 758 F.3d 215, 220-21 (2d Cir. 2014).

Brown's complaint is sparse. He alleges he practices Wicca, that pursuant to prison policy and Santiago's order he was deprived of a Wicca bible, and, construed liberally, that the Wicca bible is the foundation of Wicca practice. Brown does not allege, however, any facts

6

describing the adverse impact of the deprivation on him. He does not describe any adverse effects on his practice of Wicca, and he does not allege whether he must violate any of his beliefs. These facts do not allow me to infer that Brown's religious beliefs are being substantially burdened. But because it remains an open question whether such a showing is required, *see Holland*, 758 F.3d at 220 ("It has not been decided in this Circuit whether, to state a claim under the First Amendment's Free Exercise Clause, a prisoner must show at the threshold that the disputed conduct substantially burdens his sincerely held religious beliefs") (internal quotation and citation omitted), I will allow the claim to proceed at this very preliminary stage, rather than decide the matter without affording the parties a full opportunity to brief the issue.[2] This ruling is without prejudice to the right of defendants to file a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6).

*Establishment Clause*

Brown alleges that, by banning *Witches' Craft*, defendants were "dictating to [him]" which religion he had to worship. Doc. #1 at 5 (¶ 3). I construe this allegation as an attempt to state a claim for a violation of the First Amendment's Establishment Clause. I will dismiss this claim because Brown alleges no facts to support it.

---

[2] Some courts within this circuit have looked to a plaintiff's complaint to evaluate whether defendants have met their burden of proffering a rational relationship between a legitimate penological interest and the conduct at issue. *See, e.g.*, *Lombardo v. Freebern*, 2018 WL 1627274, at *11 (S.D.N.Y. 2018) (dismissing claim "because [p]laintiff's [c]omplaint makes clear that [d]efendants have proffered a valid explanation as to why [p]laintiff was denied access to the religious books . . . which plaintiff has failed to rebut"). But because the reasonable relationship inquiry is an involved one, I will not make such a determination at this very early point. *See Holland*, 758 F.3d at 222–23 (describing factors a court must consider); *Washington v. Chaboty*, 2011 WL 102714, at *10 (S.D.N.Y. 2011) ("The Second Circuit has cautioned that evaluation of penological interests is a fact-intensive inquiry that is not ordinarily amenable to resolution on a motion to dismiss."), *rev'd in part on other grounds sub nom. Washington v. Gonyea*, 538 F. App'x 23, 27 (2d Cir. 2013) ("As the district court correctly recognized, assessing the reasonableness of penological interests is a factual and context-specific inquiry that in this case is inappropriate at this preliminary stage of the proceedings.").

The First Amendment of the Constitution provides that "Congress shall make no law respecting an establishment of religion." U.S. Const. amend. I. To evaluate whether an otherwise-secular government action "officially favor[s] one religious denomination over another," courts in the Second Circuit continue to apply the Supreme Court's analysis from *Lemon v. Kurtzman*, 403 U.S. 602 (1971). *See Am. Atheists, Inc. v. Port Auth. of N.Y. & N.J.*, 760 F.3d 227, 237, 238 n.12 (2d Cir. 2014). To survive an establishment clause challenge, the *Lemon* test requires that the government action in question "'must (1) have a secular . . . purpose,' (2) have a 'principal or primary effect . . . that neither advances nor inhibits religion,' and (3) 'not foster an excessive government entanglement with religion.'" *Id.* at 238 (quoting *Lemon*, 403 U.S. at 612–13).

Under the sparse facts Brown has alleged, the denial of his Wicca bible survives the *Lemon* test. Brown alleges that defendants denied him the book because it was written in code. *See* Doc. #1 at 3 (¶¶ 3–4), 8, 12. Similarly, Santiago's grievance review states that a book written in code "presents a security concern in any correctional setting." *Id.* at 12. Brown has not, on the other hand, alleged any religious purpose in denying him access to the book. He similarly has not alleged that the denial endorses or could be perceived to endorse or disapprove of any religious view, and thus does not allege that the denial fails the second prong of the *Lemon* test. *See Am. Atheists*, 760 F.3d at 242–43. And by the same token, Brown also does not allege any excessive entanglement between government and religion. *See Skoros v. City of N.Y.*, 437 F.3d 1, 36 (2d Cir. 2006) ("[E]ntanglement analysis is properly treated as 'an aspect' of *Lemon*'s second-prong 'inquiry into a [government action's] effect.'" (quoting *Agostini v. Felton*, 521 U.S. 203, 233 (1997))). Because Brown fails to allege a violation of the Establishment Clause, he cannot

8

state a plausible claim for relief under the same. I will therefore dismiss the Establishment Clause claim.

### *Equal Protection*

Brown also claims that the rejection of the book was discriminatory in nature. Doc. #1 at 5 (¶ 3); *see also id.* at 1. I construe this as an attempt to state a claim for the violation of the Fourteenth Amendment's Equal Protection Clause. As with the Establishment Clause claim, I will dismiss this claim because Brown does not allege enough facts to give rise to plausible grounds for relief.

The Equal Protection Clause protects prisoners from wrongful discrimination. The provision does not mandate identical treatment for each individual; rather it requires that the government treat people in similar situations the same way. *See City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 439–40 (1985). To prevail on an Equal Protection claim, Brown must allege that he was treated differently from other similarly situated individuals, and that the reason for that different treatment was intentional discrimination. *See Phillips v. Girdich*, 408 F.3d 124, 129 (2d Cir. 2005).

Brown does not make any of these allegations. Instead, he only states in conclusory terms that he was unable to "practice religion without discrimination," Doc. #1 at 1, and that there was no reason for denying him the Wicca bible other than discrimination, *id.* at 3 (¶ 10). But crucially, Brown does not allege that defendants actually treated him differently from anyone else. Even construing his complaint as alleging that he was denied religious literature when prisoners of other faiths were not, Brown repeatedly gives the reason for this treatment: that the Wicca bible was (or portions thereof were) written in code. He does not allege that prison

officials enforced this policy selectively, nor that defendants used the policy pretextually. As a result, Brown has not managed to assert that he was treated differently from anyone else for any reason, let alone on the basis of intentional discrimination. He therefore fails to state a plausible claim for relief under the Equal Protection Clause, and I will accordingly dismiss the claim.

## CONCLUSION

In accordance with the foregoing analysis, I enter the following orders:

(1) Brown's First Amendment Free Exercise Clause claim may proceed against Semple in his official capacity and against Santiago in his individual capacity for injunctive relief. His First Amendment Establishment Clause claim and Fourteenth Amendment Equal Protection Clause claim are dismissed without prejudice. I will permit Brown one opportunity to file an amended complaint with additional allegations that cure the factual deficiencies described above and state a plausible Establishment Clause or Equal Protection Clause claim based on the rejection of the *Witches' Craft* book, as well as to name any officials who personally denied Brown access to the book. Failure to file an amended complaint within **thirty (30) days** of the date of this Order will result in the dismissal of those claims with prejudice.

(2) The Clerk shall verify the current work addresses of Semple and Santiago with the DOC Office of Legal Affairs, mail a waiver of service of process request packet containing the complaint (Doc. #1) to Semple and Santiago at the confirmed addresses within **twenty-one (21) days** of this Order, and report to the Court on the status of the waiver requests on the **thirty-fifth (35) day** after mailing. If either defendant fails to return the waiver request, the Clerk shall make arrangements for in-person service by the U.S. Marshals Service on him, and he shall be

required to pay the costs of such service in accordance with Federal Rule of Civil Procedure 4(d).

(3) Semple and Santiago shall file their responses to the complaint, either an answer or motion to dismiss, within **sixty (60) days** from the date the notice of lawsuit and waiver of service of summons forms are mailed to him. If Semple and Santiago choose to file an answer, they shall admit or deny the allegations and respond to the cognizable claims recited above. They may also include any and all additional defenses permitted by the Federal Rules.

(4) Discovery, pursuant to Federal Rules of Civil Procedure 26–37, shall be completed by **April 28, 2019**. Discovery requests need not be filed with the Court.

(5) All motions for summary judgment shall be filed by **May 28, 2019**.

(6) Pursuant to Local Civil Rule 7(a), a nonmoving party must respond to a dispositive motion within **twenty-one (21) days** of the date the motion was filed. If no response is filed, or the response is not timely, the dispositive motion can be granted absent objection.

(7) If Brown changes his address at any time during the litigation of this case, Local Court Rule 83.1(c)2 provides that he MUST notify the court. Failure to do so can result in the dismissal of the case. Brown must give notice of a new address even if he is incarcerated. Brown should write "PLEASE NOTE MY NEW ADDRESS" on the notice. It is not enough to just put the new address on a letter without indicating that it is a new address. If Brown has more than one pending case, he should indicate all of the case numbers in the notification of change of address. Brown should also notify defendants or defense counsel of his new address.

It is so ordered.

Dated at New Haven this 30th day of October, 2018.

/s/ *Jeffrey Alker Meyer*
Jeffrey Alker Meyer
United States District Judge